## TRIAL FOR MURDER IN THE FIRST DEGREE.

### Circuit Court for Erie County.

### DOMINIC SELVAGGIO V. STATE OF OHIO.*

#### Decided, April 12, 1912.

*Criminal Law—Examination of Jurors on Their Voir Dire—Same Act May be Alleged to Have Been Actuated by Different Intents—State Can Not be Required to Elect Between Counts Charging the Same Crime, When—Competency of Evidence—Charge of Court.*

1. In an examination as to the qualification of jurors to sit in a trial for murder in the first degree, it is not error for the state to ascertain by proper questions whether a prospective juror would insist on a recommendation of mercy, in the event that the verdict were to be based on circumstantial evidence.

2. Where the crime is charged in two counts—the first that the homicide was committed with deliberate and premeditated malice, and the second that it was committed in the perpetration or attempted perpetration of robbery—it is not error to overrule a motion to require the state to elect upon which count it will go to trial.

3. Evidence accounting for certain parties, and for their disappearance on the occasion of, the murder charged in the indictment, is competent where so inextricably interwoven with the crime that without it a wrong suspicion might arise as to who was the perpetrator.

*George W. Ritter,* for plaintiff in error.

*Henry Hart,* Prosecuting Attorney, and *George C. Beis,* contra.

RICHARDS, J.; WILDMAN, J., and KINKADE, J., concur.

Error to the Court of Common Pleas of Erie County, Ohio.

The plaintiff in error, Dominic Selvaggio, was jointly indicted with one Rocco Klawetch, alias Rocco Lavecchia, for murder in the first degree in killing one Antonio Viscario. The indictment contains two counts, the first count charging the homicide to have been committed purposely and of deliberate and premeditated malice, and the second count charging it to have been com-

---

*Affirmed by the Supreme Court without opinion, 86 Ohio State, 366.

mitted in the perpetration and attempt to perpetrate a robbery of the said Antonio Viscario. The crime is alleged to have been committed upon the 19th day of September, 1911, on Kelley's Island in this county.

Dominic Selvaggio, upon his trial in the court of common pleas, was found guilty by the jury of murder in the first degree under the second count of the indictment, without any recommendation to the mercy of the court, and has been sentenced by the court upon that verdict to death in the electric chair.

The bill of exceptions contains all the evidence and is very voluminous, consisting of some one thousand pages in addition to a very great many exhibits. The case has been argued both orally and in briefs with great ability by counsel, and we have spent much time in giving a thorough and painstaking examination to the entire record as was demanded by the importance of the case. The alleged errors which it will be necessary to examine, relate to the impaneling of the jury, the refusal of the court below to compel the state to elect on which count of the indictment it would proceed, the admission of evidence, the ruling of the court upon a motion to direct a verdict in favor of the defendant, the weight of the evidence, and the charge of the court to the jury.

Many errors are claimed to have occurred in the impaneling of the jury, but nearly all of them relate to the ruling of the court upon questions propounded relative to the death penalty. A fair sample arises in the examination of Horace Ramsdell, who was qualified and served as a juror. During his examination on his *voir dire*, he was asked this question by counsel for the state: "If you were satisfied that the defendant did commit the crime as he stands charged in the indictment beyond a reasonable doubt, would the fact that the state did not produce an eye-witness to the actual killing, influence your mind against the imposition of the death penalty?" Against the objection and exception of the defendant he answered: "I don't think it would; no, sir."

The contention on behalf of the defendant seems to be that the matter of inflicting the death penalty, or recommending mercy upon the returning of a verdict of guilty of murder in the first

degree, rests wholly within the province of the jury, and that it was therefore improper and prejudicial to make the above or similar inquiries.

While the statutes of Ohio leave it entirely with the jury to determine whether they will recommend mercy in the event of returning a verdict finding the defendant guilty of murder in the first degree, yet such recommendation ought to be based on reason and ought not to be the result of mere arbitrary whim or caprice. If a man, for instance, upon examination as to his qualifications as a juror in such a case, should state that if the jury reached a verdict finding the defendant guilty of murder in the first degree he would insist on a recommendation of mercy if the verdict were based on circumstantial evidence, such answer would indicate a condition of mind of which the state should be advised. The state might desire to exercise peremptory challenges and it would then have an opportunity of taking such action as might be proper with knowledge of the existing conditions. We believe and hold the question to be entirely proper and this holding will apply to all similar questions asked of others who were examined on their *voir dire*.

Later, in continuing the examination of the same juror, Horace Ramsdell, it developed that he had an opinion as to the guilt or innocence of the defendant, based largely upon what he had read as to the officers having traced the defendant to Pittsburgh, but upon examination by the court he expressed an ability to lay aside that opinion and base a verdict entirely upon the evidence as he should hear it in court and the charge of the judge. We think the court, having the juror before him and being able to judge not only from his statements but from his manner and appearance, did not abuse his discretion in holding that he was qualified to serve as juror. *Lindsey* v. *State*, 69 O. S., 215.

At the conclusion of the impaneling of the jury, the defendant was entitled to three additional peremptory challenges which he did not exercise, and the bill of exceptions recites: "There now being twelve men in the panel of jurors, and the state and defendant being both satisfied with the jurors, the jury was sworn." We can not say that he was prejudiced by

any action of the court in impaneling the jury. The record discloses that both court and counsel exercised the greatest care in protecting the rights of the defendant in procuring an impartial jury, and it appears from the record that a jury was obtained not subject to any legal objection.

At the opening of the case and also at the conclusion of the case made by the state, the defendant moved the court to require the state to elect upon which count of the indictment it would proceed, which motion was overruled and to which ruling the defendant excepted.

It is entirely clear from the record that there was but one transaction constituting the crime charged in the indictment, the first count charging the homicide to have been committed with deliberate and premediated malice, and the second count charging it to have been in the perpetration or attempted perpetration of robbery. Under such circumstances, it has always been the rule that in order to avoid a failure of justice, the state may set forth the transaction in various counts, and it being but one transaction, may not be required to elect upon which count it will proceed. The action of the court in overruling the motion to require an election was clearly correct (*State* v. *Bailey,* 50 O. S., 636; *Cottell* v. *State,* 12 C. C., 467). The rule is concisely stated in 22 Cyc., 394, as follows: "The same act may be alleged to have been actuated by different intents."

The only claimed error in the admission of evidence which appears to be entitled to consideration, relates to evidence of the death by violence of two men known as the Barlinia brothers, upon the same night and in the same locality as that in which Antonio Viscario met his death. The record discloses that Viscario was killed upon the night of September 19, 1911, on Kelly's Island, by having his throat cut almost from ear to ear, after which his body was thrown into the lake. He lived in the west half, known as Number 5, of a double house on that island, which portion of the house was also occupied by the defendant, Dominic Selvaggio, and by Rocco Lavecchia, jointly indicted with him and by the two Barlinia brothers, all Italians. The Barlinia brothers were never seen alive after that night and

their bodies were subsequently found in the lake, their throats being cut in the same manner as that of Antonio Viscario.

In order for the state to make a case against the defendant, the practical necessity rested upon it to account for the Barlinia brothers; and their disappearance upòn the same occasion as that of Viscario and at the same place, was so inextricably interwoven with the crime charged in the indictment, that no error was committed by the trial court in allowing the evidence. In the absence of such evidence, the suspicion might well have arisen that the Barlinia brothers were themselves the guilty parties. The trial court in its charge to the jury, very carefully limited the purpose for which the evidence might be considered and it seems to us it was a proper link in the chain of circumstantial evidence bearing upon the guilt of the defendant. The evidence was admissible for the further reason that the defendant had made conflicting statements to account for the absence of the Barlinia brothers.

In the charge of the court to the jury, the trial judge carefully defines, under the first count in the indictment, the crime of murder in the first degree and the various included offenses. In charging relative to the second count, the jury was told in substance that if they found the defendant guilty of an unlawful and purposed killing while in the commission of a robbery, there could be but one of two verdicts, namely, murder in the first degree without a recommendation of mercy, or murder in the first degree with a recommendation of mercy, and that under the charged in the second count of the indictment, there were no included offenses of lower grade. This language has given us some concern. The statement, together with all other propositions in the general charge, was excepted to by the defendant.

The court was perhaps not technically correct in the language there used, if it had remained alone and unexplained by other portions of the charge; but the fullest opportunity was given to the jury in other portions of the charge and in the forms of verdict which were submitted, to find upon every aspect of the case as to any offense charged in the indictment, or any included offense therein, and certainly in view of the holding of

our Supreme Court in *Adams* v. *State,* 29 O. S., 412, the defendant has no just cause of complaint.

The remaining alleged errors relate to the action of the court in overruling the motion to direct a verdict, and to the claim that the verdict and judgment are not sustained by the evidence. It would not be profitable to review the great mass of evidence which was introduced in the trial of this case, and it is sufficient to say upon a careful examination of all of it, we are unanimously of the opinion that the verdict of the jury was fully justified and that the court did not err in overruling the defendant's motion for an instructed verdict or for a new trial.

Finding no prejudicial error, the judgment of the court of common pleas will be affirmed.